CASE 98—ACTION TO QUIET TITLE TO LAND—JANUARY 30.

# Nicholas County v. Hawkins.

APPEAL FROM NICHOLAS CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS.   REVERSED.

TURNPIKE ROADS—PURCHASE BY COUNTY—TITLE TO TOLL HOUSE.

Held:   Where a county purchased from a turnpike company its
    road and toll houses, under a statute authorizing it to make
    the purchase, the county has the right to the use and possession
    of one of the toll houses, as against one who obtained posses-
    sion from a gate keeper of the turnpike company without its
    knowledge or consent, as the use of the toll house by the county
    is not inconsistent with the use for which it was acquired by
    the turnpike company.

KENNEDY & WILLIAMS, NORVELL & ROBINSON AND JOHN F.
    MORGAN, FOR APPELLANT.

WINFIELD BUCKLER, FOR APPELLEE.

    (No briefs in the record.)

OPINION OF THE COURT BY JUDGE BURNAM—REVERSING.

This suit was instituted by appellee to quiet his title to
a small tract of land, on which was situated a house for-
merly used by the Maysville & Lexington Turnpike Road
Company for a residence for its toll-gate keeper.   It ap-
pears that it is included in a boundary of land conveyed to
appellee by a deed by Mrs. P. H. Bedinger in 1894, and that
she held title to the same by the will of her deceased hus-
band, which was probated in 1878.   How, when, or under
what circumstances the turnpike company acquired posses-
sion of this small piece of land does not appear.   But it
does appear that for more than fifty years previous to No-
vember, 1897, they were in possession of this lot of ground,
claiming to be the owners thereof, and using it as a resi-

dence for parties employed by them to collect toll and keep their road in repair. Shortly before November, 1897, the toll gate of the turnpike company located at this point was torn down by a mob, and the company was forcibly prevented from again erecting same by the same lawless influences; the law temporarily being inadequate to protect them in their legal rights. During this interval of time, and under these conditions, appellee obtained possession of the house from Hollar, who occupied it as a tenant of the company, and who had been put in possession by the company to act as its gate keeper. Possession was so acquired without the knowledge or consent of the turnpike company. This was the condition of the property when appellee instituted this action on the 20th of December, 1897, for the alleged purpose of quieting his title to the land, claiming to be the owner and in possession thereof." About the same time the turnpike company contracted to sell their road, toll houses, quarries, and all property owned by them in Nicholas county to the county. And in January, 1899, they conveyed this property to the county, and the county took possession thereof, and has continued to maintain the turnpike as a public thoroughfare ever since.

By the act of 1896 counties were authorized to acquire by purchase turnpike and gravel roads, and maintain and keep them in repair by and through the provisions of the fiscal court.

By subsection 6 of that act, which is now subsection 6 of section 4748b of the Kentucky Statutes, it was expressly provided "that all toll houses and land occupied for the use thereof, or owned or held by any turnpike road company, which may be acquired (by the county) under this act, shall pass with the possession of such road, to be held by the fiscal court for the use of such road, and may be leased and

rented by said court and the proceeds shall be applied to
the maintenance of county roads acquired under this act.
The fiscal court may either lease or sell the toll houses and
lands that may come into their possession, but the parties
owning the land from which the toll lot came off of origin-
ally shall have the refusal of purchase."

Undoubtedly the turnpike company could have sold and
conveyed their road, toll houses, quarries, etc., to another
corporation without losing their claim to the toll gate
property, whether their title thereto was fee simple or
only an easement.   And the effect of the act of 1896 was to
give to the counties the right to acquire and operate these
roads as public thoroughfares, and the act in express  terms
says the houses and lands shall be held for the use of the
road.   The property in controversy was included in, and
formed a part of, the purchase by the county from the
turnpike company, and there is no evidence of any design
on the part of the county to dispose of or make any use of
it which is inconsistent with its use by the turnpike com-
pany.   While the house will not be used as a residence of
a toll gatherer by the county, it continues to be a valuable
part of the turnpike road, in that it may be used by the
county as a dwelling house for persons who they may de-
sire to employ to keep the road in repair as a public thor-
oughfare, and such use would not be inconsistent with  the
use for which it was originally acquired and used by the
turnpike company during the long period of their posses-
sion.

Under the testimony in this case, we think it is unneces-
sary to determine whether the title under which the turn-
pike company held had ripened into a fee-simple, or con-
tinued only as an easement, and that the county by their
purchase under the act of 1896 are entitled, under the facts

of this record, to the use and possession of the property in contest. For the reasons indicated, the judgment is reversed, and the cause remanded for proceedings consistent with this opinion.